Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 4969 | **DATE** | 3/29/2002 |
| **CASE TITLE** | GAY C. RICCA STROUD vs. FRANCISCO LOPEZ | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] The order of the Bankruptcy Court of June 21, 1996 denying the motion of the Trustee to sell 100 shares of stock and the building at 9830 South Ridgeland Ave., Chicago, Illinois, to Gay Ricca Stroud and granting the alternative relief to abandon the estate's interest the same to assets is hereby VACATED. This matter is REMANDED to the Bankruptcy Court for further proceedings consistent with this order. The order of the Bankruptcy Court of the same date granting the motion of the Trustee to abandon the estate's interest in the property located at 4146 Western Avenue, Western Springs, Il. is AFFIRMED. This action is closed. ENTER MEMORANDUM OPINION AND ORDER
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 29 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 13 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | | | date mailed notice | |
| PAMF | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

In re Bankruptcy of: )
FRANCISCO LOPEZ )
) No. 96 C 4969
Debtor. )
) HONORABLE DAVID H. COAR

## MEMORANDUM OPINION AND ORDER

This hoary case involves an appeal brought by Gay Ricca Stroud ("Stroud"), a creditor of the debtor, Francisco Lopez ("Lopez" or "debtor") directed at two orders issued by the bankruptcy judge on or about June 21, 1996. In this court, Lopez defends the orders.

On November 8, 1993, Lopez filed a petition seeking relief under Chapter 7 of the Bankruptcy Code. Included among the assets of the estate were 100 shares of stock in the debtor's wholly-owned medical services corporation, Cardiology and Internal Medicine Associates, S.C. ("the corporation"), real estate located at 9830 South Ridgeland Avenue ("the Ridgeland property"), and a residence located at 4146 Western Avenue ("the residence"). On May 24, 1996, Leonard Groupe, trustee of the debtor's bankruptcy estate, filed motions to sell the estate's interest in the stock and the Ridgeland property to Stroud and to abandon the estate's interest in the residence. The motion to sell requested, in the alternative, that if the court did not approve the proposed sale, the trustee be authorized to abandon the estate's interest in both assets. The terms of the proposed sale provided that liens on the property would be unaffected by the transfer, i.e., the property would remain encumbered by any liens, and that Stroud would pay $25,000.00 each for the stock and the Ridgeland property. The trustee estimated that the fair market value of the of the stock could be as high as $1,500,000.00, but realizing a value that high would require that the debtor provide a covenant not to compete and that the debtor "cooperate" in the sale. It is unclear as to what cooperation was required. As to the Ridgeland property itself, the trustee had an appraisal showing the value of the real estate to be $1,350,000, with liens on the property in a total amount of approximately $1,650,000.00. Stroud apparently offered the

1



trustee $5,000.00 for the estate's interest in the residence, but the trustee declined to request the court to approve a sale for that amount, instead moving to abandon the property. The residential property was valued in the debtor's schedules in the amount of $60,000.00. Mid America Bank ("Mid America") held a first mortgage lien on the property in the amount of $30,000.00 and there were junior liens on the property in the total amount of approximately $1,500,000 in connection with the claims of certain creditors of the corporation.

The debtor filed a written objection to the proposed sales, suggesting three reasons why the court should not approve: 1) the corporation was an Illinois Medical Service Corporation and, by state law, a transfer of the trustee's interest in the stock might be illegal under Illinois law if the transferee was not a licensed medical professional (this Court will assume that Stroud does not meet this requirement); 2) the sale of the real estate would result in a potential tax liability to the estate in excess of the sale proceeds; and 3) the trustee's motion did not attach a copy of a written offer from Stroud.

At the hearing on the trustee's motions, the trustee was present along with counsel for Stroud, Mid America, and US Bank ( the holder of the first mortgage on the Ridgeland property). The trustee led off the proceedings by stating that his accountant had examined the tax consequences of the proposed sale and concluded that there would be no adverse tax consequence to the estate if the sale took place. Indeed, the trustee related, the accountant was of the opinion that the sale might yield positive tax consequences. Lopez, however offered new objections. He asserted that 90% of the estate debt also was debt of the corporation and that if the sale was approved, the corporation would not be viable (or legal under Illinois law, as he saw it). In his view, if the property was transferred to Stroud, the amount realized from the contemplated sales would yield a paltry 3% return to those creditors holding joint debts, with scant possibility of realizing payment from the corporation. Implicit in this argument is the assertion that if the proposed sale was refused and the debtor emerged from bankruptcy with control of the corporation intact, the corporation would repay the corporate claims (and 90%) of the individual claims. As proof of the likelihood that the corporation would not be successful if Stroud purchased the stock, counsel for Lopez represented that Lopez would not work for Stroud and that another doctor had indicated that he would resign if the stock were transferred to a non-

2

physician. Continuing with his parade of horribles, Lopez predicted that if the contemplated sale took place and the corporation folded, the impact on patients would be significant. As to his own patients, Lopez posited that he would be unable to open another practice because the bankruptcy proceeding would prevent him from obtaining credit and that his patients would suffer the loss of his services. Finally, Lopez invoked the plight of the 30 employees of the corporation if, as he predicted, a Stroud owned operation failed because of illegality.

Counsel for US Bank joined Lopez in opposing the sale. His argument was a rehash of Lopez's cost benefit analysis. He asserted that US Bank's mortgage was $200,000.00 - $250,000.00 more than the appraised value of the Ridgeland property and that it was in his client's best interest to deny the motion to sell the stock and the Ridgeland property and to allow Lopez to continue run his medical practice without disruption as there were substantial risks involved if Stroud acquired the business.

Counsel for Stroud argued that the if the sale was approved, Stroud would refinance the mortgage, take out US Bank's mortgage and sell the corporation to an unnamed doctor or group of doctors who had expressed interest. Stroud, through her attorney also argued that the "real" value of the corporation was greater than what the trustee estimated.

It is important to note at this point that there was no evidence presented by anyone at the hearing! There was no testimony given. All of the preceding discussion merely recites the representations of some of the lawyers at the hearing.

Because of the lack of evidence, it is tempting simply to decide the issues in this appeal on the basis of who had the burden of proof. Whoever had the burden failed to meet the burden and loses. However, somehow the hearing went off on a tangent and that tangent provided the basis for decision in the bankruptcy court. It is clear that there is bad blood between Lopez and Stroud, but the record on appeal mercifully spares this court the need to discover the source of their animosity. Nevertheless, it is clear that from the outset of the hearing in the bankruptcy court, the judge there was concerned that Stroud's offers to purchase and objection to the motion to abandon were attempts to harass and injure Lopez rather than actions taken in "good faith." I use that term because it was used by the bankruptcy judge. It is unclear what he meant by the term in the context of the motions before the court and the case law does not supply a ready

3

answer. Reviewing the transcript of the hearing, the test applied seemed to be whether Stroud had an economic motive to purchase the assets. The requirement that a purchaser of assets from a bankruptcy estate be motivated by "economics" cannot be found in the statute and there is no intuitive reason why such a requirement should be implied. If, for example, a purchaser from a bankruptcy estate seeks to purchase a building that is property of an estate because he believes that it is an eyesore and is willing to pay fair market value to tear it down and create a green-space, why should the law (or the bankruptcy judge) care about the purchaser's motives, as long as the estate receives the value of the property? Similarly, if a would-be purchaser wanted to buy a building from the estate in order to erect a bill board that proclaimed the deviousness of the debtor, it should not matter to the estate what the purchaser intends, again, so long as the estate gets value. It may be that there are some circumstances in which the purchaser's intent /motivation should be considered, e.g. where the purchaser would use the property in a way that would be intentionally harmful to present creditors or to the debtor. The parties to this appeal have cited and argued about cases in which courts did or did not impose a good faith requirement in considering sales in the bankruptcy court. It is unnecessary to discuss those cases under the circumstances of this case because there is no indication as to what conduct the bankruptcy court considered as evidencing bad faith. The face of the order denying the request to sell indicates that the ground is lack of good faith, so Lopez's arguments that that was not the real reason, do not deserve comment. More importantly, an examination of the transcript of the hearing makes it clear that the bankruptcy judge based his decision on his determination that Stroud's offer was not made in good faith. There simply is insufficient support in the record to on which to base the denial of the motion to sell (and the granting of the alternative relief of abandoning) the stock and the Ridgeland property. Assuming that good faith mattered, there is no evidentiary support for the finding. The order denying the trustees motion to sell the 100 shares of stock and the estate's interest in the Ridgeland property will be vacated, as will the order of abandonment of these properties.

The order granting the trustee's motion to abandon the residential property is another matter and that order will be affirmed. The only evidence before the court was that there was no equity in the property and the trustee determined that the $5,000.00 offer was insufficient

4

outweigh the burdensome nature of retaining the asset. The return to the estate would be negligible in light of the amount of claims. Indeed, the bankruptcy judge expressed scepticism as to whether the offers as to all three properties would do anything other than cover the trustee's expenses. Against these undisputed facts, Stroud rested her objection to abandonment of the residential property on her speculation that if she acquired the stock and the Ridgeland property, she gratuitously would pay off the junior liens on the residence and thereby create an equity for the estate at some future date. Such speculation was entirely too tenuous to defeat the prima facie showing of lack of equity and burdensomeness.

## CONCLUSION

For the reasons stated above, the order of the bankruptcy court of June 21, 1996 denying the motion of the trustee to sell 100 shares of stock and the building at 9830 South Ridgeland Ave., Chicago, Illinois, to Gay Ricca Stroud and granting the alternative relief to abandon the estate's interest the same to assets is hereby vacated. This matter is remanded to the bankruptcy court for further proceedings consistent with this order. The order of the bankruptcy court of the same date granting the motion of the trustee to abandon the estate's interest in the property located at 4146 Western Avenue, Western Springs, Il. is affirmed.

**Enter:**

_____
**David H. Coar**
**United States District Judge**

**Dated: March 29, 2002**

5